## ESCAMBIA COUNTY CIVIL SERVICE BOARD v. ESCAMBIA COUNTY COMMISSION.

No. 69-2431.

Circuit Court, Escambia County.

April 9, 1970.

Hobard O. Worley of Barksdale, Tucker & Worley, Pensacola for plaintiffs.

Jack H. Greenhut, Pensacola, for defendants.

ERNEST E. MASON, Circuit Judge.

*Final judgment:* This cause is before the court upon the amended complaint of the plaintiffs, individually, and collectively as members of and constituting the civil service board of Escambia County, and upon the motion to dismiss and answer of the defendants constituting the board of county commissioners of Escambia County, and said county. The suit is one seeking the declaratory judgment of this court as to the validity of two local ordinances enacted by the board of commissioners, one of which purports to repeal the local or special law of 1951 creating a county civil service system for Escambia County, and all subsequent amendments thereto, likewise incorporated in special or local laws enacted by the legislature of Florida, and the other which purports to create a new civil service system for the county. Plaintiffs also seek to enjoin the defendants from enforcing or implementing such ordinances.

The two ordinances under attack are attached to and made parts of the complaint, and the parties have agreed that since no other evidence is available or necessary to be presented to the court the court's ruling upon the motion to dismiss will be dispositive of the suit.

There are two issues raised by the motion, one as to the right of the plaintiffs to bring this suit, and the other, the validity of the ordinances in question. In the resolution of these issues the court is not concerned with the policy or goal sought to be achieved by the ordinances under attack. That is a political matter with which the court can have no official concern. It is therefore with dispassionate objectivity that we test the ordinances and plaintiffs' right to sue by the yardstick of the constituion of Florida, 1968, and applicable precedents. Applying such yardstick we hold the ordinances invalid and unenforceable and that the plaintiffs have a right to test their validity.

In 1951, the legislature by special law (chapter 27, 537) created a civil service system for the civil service employees of Escambia County, and provided therein for a civil service board of three members to administer and enforce the provisions of the law. The law provided that the members of the board would be appointed by the governor for fixed terms of four years, that they should serve until their successors are appointed and qualified, must take an oath of office, and are prohibited from holding any other office. By the law the board is empowered to exercise a part of the sovereign power, including the power to establish a classification plan for county employees, to certify names to the appointing authorities of the county to fill vacancies in the classified service, the power to review the acts of appointing authorities in the suspension and dismissal of such employees, to review the action of appointing authorities in the abolition of positions within the classified service, to require observance of the provisions of the law, and rules and regulations made by it in the administration of the law, and the power to increase or decrease salaries of employees within the classified service without the advice or consent of the employing authority involved.

This initial law has been amended seventeen times since 1951, and in 1967, by chapter 67-1370, the legislature revised the civil service system for Escambia County, increased the board from three to five members, continued in office the then present three members of the board, and provided for the appointment of board members by the governor for terms of four years, with confirmation by the Senate required. The 1967 law empowered the board with the same general powers conferred on it by the 1951 law, and amendments thereto.

Acting upon the authority allegedly granted it by the 1968 Florida Constitution the defendant, board of county commissioners, enacted two ordinances on January 9th, 1970, one purporting to repeal the 1951 Civil Service Law and all subsequent amendments thereto, including chapter 67-1370, and the other purporting to create a county civil service system for the county of Escambia. The latter ordinance purports to create a civil service board of five members, two to be appointed by the elected officials of the county, two by the classified employees of the system, and a fifth member by the first four.

The court holds that the plaintiffs are county officers. This is evident from the manner of their selection and the nature of the powers entrusted in them by the special laws above referred to establishing a county civil service system in Escambia County, and

providing for their selection, tenure and duties. As public officers they have no property in their respective offices which would prevent the abolition of such offices by proper authority, in this instance the legislature which created the offices, or by constitutional enactment. But, it is contended here by the plaintiffs that the entity which seeks to abolish their offices, namely, the board of county commissioners, has no constitutional or statutory power to do so, and that the ordinances which purport so to do are void because of lack of such power in such board. We hold that the plaintiffs as constituting the civil service board have standing in court to test the validity of the acts which purport to abolish the present civil service system and the offices to which they have been duly and regularly appointed for terms which have not yet expired. Granted, the civil service board has not been given the express power to sue collectively as such board, but by virtue of the fact that the board is charged by the very law which creates it with the power to require and enforce observance of the provisions of the law creating the system carries with it the reasonable implication of the right to sue to uphold the law which a body, other than the one which enacted the law, is attempting to repeal.

The individual members of the civil service board have a right to prevent the abolition of their offices by invalid ordinance, if such ordinance be in fact invalid. The court is cognizant of the almost universal rule that an office holder cannot question the constitutionality of a state statute which abolishes his office. The reason for this rule is that an officer has no such title to his office as prevents the power that created it from terminating it or changing it. But, it does not follow that an office created by act of the legislature may be abolished by a county ordinance in the absence of power to enact in the body enacting the abolition ordinance. The case before the court is one of first impression in Florida, for it is the first time that there has come before the court the question of the power of a county to abolish by local ordinance an office created by act of the legislature. To hold that the members of a board exercising quasi-judicial power as well as administrative power, and which has been created by an act of the legislature, have no standing in court to test the validity of the act of a local governmental agency or entity which seeks to abolish their offices and prevent them from exercising the powers, duties and functions of offices to which they have been appointed by authority of the legislature would be to deny to them the right prescribed by §21 of the Declaration of Rights. This provision of the Florida Constitution says that the courts shall be open to every person for redress of any injury.

120

It goes without saying that an officer who is removed from office before his term expires suffers an injury. If his removal results from abolition of his office by the body which creates it, then, though injured, he has no redress because he has been removed by act of the creator of his office. His loss of office under such situation is damnum absque injuria — loss without harm or injury which is redressible by an action. But where he loses his office by the act of a body other than the one which creates it, to hold that he has no right to question the power of such body to abolish his office is to deny to him redress to the court guaranteed to him by §21, supra. Suppose the board of public instruction should pass a resolution purporting to abolish the civil service board, could it be reasonably argued that the members of such latter board would not have redress to the courts to test the validity of such action? The answer is obvious. It appears to be just as obvious that such board should have redress to the courts to test the validity of an ordinance of the board of county commissioners which purports to do the same thing. The members of the civil service board cannot question the power of their creator, the legislature, to abolish that board, but certainly they have the right to question the power of any other political entity over them.

The critical question in this case is whether the board of county commissioners of Escambia County has the power to repeal by county ordinance statutes of the state of Florida which have established a civil service system for the county and which created a civil service board to administer such system? If it cannot do so, then of course, it likewise has no power to establish another civil service system nor to create a new civil service board to administer such system. The answer to this question must be found in the 1968 constitution of Florida, for it is conceded that no such power existed prior to such constitution becoming effective.

The ultimate purpose and effect of the ordinances under attack, if they be valid, is to abolish the present civil service system of Escambia County, including the present civil service board, and to create and establish in their stead a new system and a new board. Therefore, there is inherent in the question of the power of the board of county commissioners to abolish the concomitant power of such board to establish and create, for if that board can establish and create it can abolish. Conversely, if it cannot establish and create it cannot abolish. Thus, provisions of the Florida Constitution having to do with the creation of civil service systems and the appointing of county officers, including civil service boards, are relevant to the question sub judice.

We now look to several key provisions of the present constitution for answer to this question. First, there is §14 of article III which in itself answers the question, unless there be other provisions which show clearly to the contrary. This section is included in the article of the constitution dealing specifically with powers of the legislature. There it is provided that —

> *"By law* there *shall be created* a civil service system for *state employees,* except those expressly exempted, and there may be created civil services systems and boards for *county, district* or *municipal employees* and for such offices thereof as are not elected or appointed by the Governor, and there may be authorized such boards as are necessary to prescribe the qualifications, method of selection and tenure of such employees and officers." (Italics added.)

This section mandates the legislature *by law* to create a civil service system for state employees, and gives it the option *by law* to create such systems for local units of government. A "law" is an enactment of the legislature, approved by the governor, or one passed over his veto or one which becomes a law without the governor's approval by lapse of time. A "law" is not a county or municipal ordinance, although, the latter may have the effect of law upon those to whom it relates. By context, appearing as it does in a section of the article of the constitution dealing with the legislature and its procedures and powers, the word "law" as used in this section means a bill which has been enacted into law by the legislature. And there is no other provision of the constitution which specifically empowers any other entity than the legislature to create civil service systems. Therefore, the principle of statutory construction of *expressio unius est exclusio alterius* applies. That is to say, the placing of the power in the legislature without specifically granting it to any other political entity is to deny such power in any such other. For this one reason alone the attempt of the board of county commissioners to abolish the present civil service system and to create another in its place is an abortive one, and is of no effect.

The above conclusion is further fortified by §6(b) (the schedule) of article VIII, the article dealing with local government, which provides that —

> "(b) *Counties; County Seats; Municipalities; Districts.* The status of the following items as they exist on the date this Article becomes effective is recognized and shall be continued until changed in accordance with *law: . . . the method of selection of county officers . . ."* (Italics added.)

And §6(c) which provides —

"(c) *Officers to continue in office.* Every person holding office when this Article becomes effective shall continue in office for the remainder of the term *if that office is not abolished.* If the office is abolished the incumbent shall be paid adequate compensation to be fixed by *law,* for the loss of emoluments for the remainder of the term." (Italics added.)

This language clearly contemplates that a county officer holding office when the constitution of 1968 became effective shall continue in office until the office is abolished *by law,* not by county ordinance.

We have determined that the members of the civil service board of Escambia County are county officers. Therefore, the provisions of §5 of article II of the constitution dealing with public officers are pertinent. In sub-section (c) of §5 it is provided —

"(c) The *powers, duties,* compensation and method of payment of state and *county officers shall be fixed by law.*" (Italics added.)

This can mean only one thing — the *powers* and *duties* of the civil service board of Escambia County can be fixed only by *law,* not by county ordinance.

Then again in article VIII dealing with local government we find §1(d) concerning *county officers.* This sub-section creates certain specific county officers, namely, sheriff, tax collector, tax assessor, clerk of circuit court, and supervisor of elections, and states that they must be elected by the electors of the county, "*except,* when provided by county charter or *special law approved by vote of the electors of the county, any county officer may be chosen in another manner therein specified,* or any county office *may be abolished when all the duties of the office prescribed by general law are transferred to another office.*" (Italics added.) This language can mean only one thing — no county officer may hereafter be chosen except by election or other manner provided by county charter *or special law approved by vote of the electors of the county.* In Escambia County, members of the civil service board hereafter may be chosen, or have their offices abolished, only by special law approved by vote of the electors of the county. Neither act may be accomplished by county ordinance.

The grant of power of self-government to counties not operating under county charters is provided in §1(f), article VIII. There it is provided —

"(f) *Non-Charter Government.* Counties not operating under county charters shall have such power of self-government as is provided by general or special law."

The 1969 act of the Florida legislature implements this constitutional provision by chapter 69-234 in these words —

"Section 1. In accordance with the provisions of Article VIII, Section 1 of the state constitution, Counties shall have all powers of local self-government, including governmental, corporate and proprietary powers to enable them to conduct county government, perform county functions and render county services, and may exercise any such power for county purposes, for the health, safety or welfare of its citizens, *not inconsistent with general or special law.*" (Italics added.)

Thus, it is clear that a non-charter county may not exercise any power which is inconsistent with any existing general or special law. This is true both by constitutional and legislative limitation of grant. That the attempt of the county by ordinance to abolish the present civil service system and board and to substitute another of its creation is inconsistent with the special laws establishing the same goes without saying.

Furthermore, the ordinance making power of the county is specifically limited by another provision in sub-section (f), supra, namely the second sentence of the sub-section as follows —

"The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances *not inconsistent with general or special law,* but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict." (Italics added.)

The only exception to this prohibition against enacting an ordinance conflicting with a local law is the one contained in sub-section (6)(d) of article VIII. This provision is as follows —

"6(d) *Ordinances.* Local laws relating only to unincorporated areas of a county on the effective date of this Article may be amended or repealed by county ordinance."

This is no authority for the validity of the ordinances in question for the local laws sought to be repealed are ones affecting the whole county, not just the unincorporated areas. The civil service system of the county is not limited in its operation to the non-incorporated areas. As a matter of fact, of which the court takes judicial notice, the great majority of the county employees covered

by the civil service laws live and work within the corporate area of the city of Pensacola. The site of the office of the civil service board and its staff, and the place of its meetings are in the county court house, located within the city of Pensacola. The clear intent of the language of sub-section (d), supra, is to grant to counties police power within the unincorporated areas of such counties, even though such may conflict with some provision of an existing local law.

The defendants contend that the prohibitions against passage of ordinances in conflict with legislative enactments apply only to future such enactments. However, there is no qualifying language which indicates such construction. The language in each instance is that no ordinances shall be inconsistent with general or special law, which means existing laws as well as future ones.

The court concludes and finds that the two ordinances in question, designated Ordinance 69-1, or Escambia 70-1, and Ordinance 69-2, or Escambia 70-2, copies of which are attached to the amended bill of complaint herein, are unconstitutional, invalid and without the power of the county of Escambia and the board of county commissioners thereof to implement and enforce, and are hereby declared to be void and of no force or legal effect whatsoever.

It is, therefore, ordered and adjudged that the two ordinances described and referred to in the last of the foregoing paragraphs be and they are declared void and of no force or legal effect, and the county of Escambia and the board of county commissioners of said county, and each member thereof, and the successors in office to the members of said board, be and they are severally, collectively and jointly permanently enjoined and restrained from committing any act or acts, and from taking any step or steps toward the enforcement or implementation of said ordinances, or either one of them.

The court has noted the prayer of the plaintiffs for an order requiring the county commissioners to pay to plaintiffs' attorney an attorney's fee from funds appropriated to the use of the civil service board in its budget for legal services. Believing that in light of this judgment the board of county commissioners will hereafter honor the appropriate requisition for such purpose the court reserves jurisdiction herein pending action of said board of county commissioners upon such a requisition hereafter to be made.

Jurisdiction is also reserved to enter such further orders herein as hereafter become necessary for the enforcement of this judgment.